IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOODWIN STEEL CASTINGS LTD., | ) | |
|     Plaintiff | ) | |
| | ) | |
|       v. | ) | Civil Action No. |
| | ) | |
| GENERAL DYNAMICS CORP. A/K/A | ) | |
| ELECTRIC BOAT CORP. A/K/A | ) | |
| GENERAL DYNAMICS ELECTRIC | ) | |
| BOAT | | |
|     Defendant | ) | MAY 12, 2021 |

## COMPLAINT

AND NOW, comes the plaintiff, Goodwin Steel Castings Ltd., by its attorneys, Brenner, Saltzman & Wallman LLP and MacDonald, Illig, Jones & Britton LLP, and files the following Complaint upon which the following is a basis.

## INTRODUCTION

1.      This is an action for damages arising out of the Columbia Common Missile Compartment ("CMC") Build III Continuous Production Purchase Order No. PPE065=034 between the parties (the "Purchase Order," attached hereto as Exhibit A), under which Plaintiff manufactures and supplies to Defendant steel submarine components in support of Defendant's prime contract with the United States Navy.

2.      Prior to and since award of the Purchase Order in May 2018, Plaintiff has successfully performed for Defendant all obligations under Purchase Order requirements.

3.      In August 2018, Defendant issued a change to the Purchase Order requirements, which resulted in significant increases to the cost of Plaintiff's performance and justified an equitable adjustment to the Purchase Order price in accordance with its terms.

4.      Specifically, Defendant awarded the Purchase Order to Plaintiff with full knowledge that Plaintiff's proposed price contemplated post-award adjustments to accommodate the cost of applying for and securing a U.S. Navy qualification that was necessary to fully perform the Purchase Order.

5.      Despite this, Defendant failed to facilitate Plaintiff's application to the Navy for the necessary qualification, leading to significant delays to production and substantial increases in Plaintiff's cost of Purchase Order performance.

6.      Further, Plaintiff timely and in accordance with the terms of the Purchase Order submitted a request for equitable adjustment for reimbursement of its increased costs of performance attributable to the costs of the necessary qualification and the increased costs of continued Purchase Order performance without the qualification.

7.      Plaintiff has remained in full compliance with the Purchase Order and its terms and conditions, and Plaintiff is entitled to an equitable adjustment in price resulting from Defendant's change in requirements.

8.      Defendant has acknowledged to Plaintiff that Plaintiff is entitled to an equitable adjustment for the increased costs of performance that are a direct result of Defendant's change and has participated in an audit to determine such cost, but has nevertheless refused to adjust the Purchase Order price.

9.      Plaintiff has made every effort to resolve the parties' dispute in accordance with the Purchase Order's terms and conditions.

2

10.     Further, Plaintiff has at all times endeavored to mitigate the impact of Defendant's change on the cost and time of performance under the Purchase Order so as not to impact this critical supply contract in support of a vitally important U.S. Navy program.

11.     Despite (i) Plaintiff's efforts and diligent documentation of its increased costs, (ii) Defendant auditing and, on numerous occasions, verbally confirming such increased costs, and (iii) Defendant admitting that its actions have caused harm to Plaintiff, Defendant has refused to pay Plaintiff as required under the Purchase Order terms governing equitable adjustment for changes to requirements.

12.     Consequently, Plaintiff has no choice but to bring this action to seek relief from the Court in the form of an award for monetary damages to compensate for the significant, out-of-scope costs incurred by Plaintiff as a result of Defendant's change in requirements.

## PARTIES, JURISDICTION, AND VENUE

13.     Plaintiff Goodwin Steel Castings Ltd. (hereinafter "Plaintiff" or "Goodwin") is a business entity located at Ivy House Foundry, Ivy House Road, Hanley, Stoke-on-Trent, Staffordshire, STI 3NR, England, and incorporated under the laws of England and Wales.

14.     Defendant General Dynamics Corp. a/k/a Electric Boat Corp. a/k/a General Dynamics Electric Boat (hereinafter "Defendant" or "GDEB") is a business entity with an address at 75 Eastern Point Road, Groton, Connecticut 06340-4989, and incorporated under the laws of the State of New Jersey.

15.     This Court has jurisdiction to hear this case under 28 U.S.C. § 1332(a), which confers original jurisdiction on federal district courts to hear suits where, as here, the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of a state and citizens or subjects of a foreign state.

3

16.     Defendant is subject to *in personam* jurisdiction in this Court because Defendant did and continues to do business within the State of Connecticut and has had continuous and systematic contacts with the State of Connecticut. Further, Defendant has consented to jurisdiction in the State of Connecticut. Upon information and belief, Defendant also advertises in this district, made material omissions and representations in this district, and breached its contract with Plaintiff in this district.

17.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim for damages occurred within this district. Specifically, as set forth in greater detail below, Plaintiff has suffered damages arising from changed conditions in its contract with Defendant, including the costs of qualification by the U.S. Navy required for performance under the contract and additional costs of performance arising directly from Defendant's changes to the contract.

## FACTUAL BACKGROUND

### A.     History of the Parties

18.     Defendant GDEB contracts with a number of steel fabricators to supply components used in the manufacture of seafaring vessels for U.S. Naval Sea Systems Command ("NAVSEA").

19.     Some components sought by GDEB for its sea vessel programs are comprised of HY-80 grade steel, a high-tensile, high yield strength, low alloy metal developed for use in naval applications, primarily for use in pressure hulls for the U.S. nuclear submarine program.

20.     Sometime prior to calendar year 2017, GDEB identified Plaintiff Goodwin as a steel fabricator capable of pouring, casting, manufacturing, and providing HY-80 grade steel components for use in GDEB programs.

4

21.     In or about December 2016, GDEB and Goodwin collaborated for Goodwin to secure from NAVSEA an authorization to pour HY-80 cast components up to a thickness of ten (10) inches to supply to GDEB for incorporation in NAVSEA vessels ("HY-80 Qualification").

22.     GDEB assisted Goodwin with obtaining HY-80 Qualification from NAVSEA and funded Goodwin's participation and successful completion of the HY-80 Qualification process.

**B.     The Request for Quote and Goodwin's Proposal**

23.     On February 24, 2017, GDEB published Request for Quote No. EB-H900-CP-BC354-011 (the "RFQ") via its on-line GD-ESN e-Supply platform.

24.     Under the RFQ, GDEB solicited prospective suppliers for ten specific HY-80 components for use in GDEB's CMC program under GDEB's prime contract with the U.S. Navy.

25.     The RFQ specified that three of the ten solicited components have section thicknesses greater than 10 inches, namely: (i) Drive-side Arm Hatch, line item 0126; (ii) Slave-side Arm Hatch, line item 0151; and (iii) Muzzle Hinge Rod Side, line item 0226.

26.     The RFQ's Bidders' Instructions directed prospective bidders to submit proposals in response to the RFQ via the e-Supply platform and provided that "[t]he electronic submittal of your bid proposal shall be considered binding as if it was submitted in writing, together with all the rights and remedies afforded by the buyer."

27.     Per the RFQ's Bidders' Instructions, all aspects of an electronically submitted proposal, if selected for award, were to be contractually binding on GDEB and the awardee and incorporated into the awarded purchase order.

28.     Per the RFQ's Bidders' Instructions, GDEB had reserved the right "to award all, part, or none of the bid items, re-issue and/or conduct [follow-on] bid requests as deemed necessary, or disqualify bids submitted for noncompliance to bid requirements.  Award selection

will be based on the 'best overall value' determination by the buyer after considering all bid attributes."

29.    The RFQ set May 4, 2017, as the deadline for submission of proposals.

30.    On March 29, 2017, Goodwin submitted relative to the RFQ a Vendor Information Request ("VIR") noting that three of the ten components sought by GDEB required a thickness of 13.5 inches, which was outside the scope of Goodwin's 10-inch HY-80 Qualification.

31.    The VIR expressly notified GDEB that Goodwin would need NAVSEA to expand the scope of Goodwin's NAVSEA casting qualification ("Expanded HY-80 Qualification") in order to be authorized to manufacture the 13.5-inch-thick components specified in the RFQ.

32.    Specifically, Goodwin's VIR states -- in red text -- the following:  "It is Goodwin's intention to bid for manufacture of these castings listed below with a proposed solution to reduce the maximum inscribed sphere, and to discuss with [GDEB] a proposal for qualification of section thickness above 10"."

33.    Via meetings and written correspondence subsequent to submission of the VIR, Goodwin and GDEB discussed the need for Expanded HY-80 Qualification.

34.    On May 3, 2017, Goodwin submitted via e-mail a letter to NAVSEA stating that Goodwin's then-current HY-80 Qualification did not include authorization to pour the 13.5-inch components and requesting Expanded HY-80 Qualification to pour the thicker components.

35.    Goodwin's May 3, 2017 scope extension request stated that "Goodwin intends to provide GDEB formal quotations for the part numbers subject to an extension of scope to be executed by NAVSEA."

36.    Goodwin copied GDEB senior management on Goodwin's May 3, 2017 request to NAVSEA.

6

37.     That same day, May 3, 2017, Goodwin electronically uploaded via the e-Supply quote platform its initial proposal in response to GDEB's RFQ.

38.     Goodwin included in its proposal both the March 2017 VIR and the May 2017 request to NAVSEA for Expanded HY-80 Qualification.

39.     On page 55 of its proposal, Goodwin specifically referenced the March 2017 VIR and again identified the three parts for which Goodwin would need Expanded HY-80 Qualification.

40.     Given that Goodwin could not quantify in its proposal the anticipated costs of Expanded HY-80 Qualification, Goodwin premised its proposed pricing in response to the RFQ on GDEB funding the post-award cost of seeking and securing from NAVSEA the Expanded HY-80 Qualification.

41.     On August 30, 2017, GDEB published via the e-Supply platform certain supplemental RFQ requirements with a deadline of September 23, 2017, for bidder responses.

42.     The supplemental requirements included revised component drawings and a requirement that bidders submit their price proposals using a uniform Excel spreadsheet.

43.     On September 23, 2017, via the e-Supply platform, Goodwin supplemented its proposal with Goodwin Reference No. D1073 ("Quote D1073"), *i.e.*, the required Excel pricing spreadsheet titled "FOUO Attachment A HY Castings SDD and RFQ Qtys.xls" ("Price Proposal").

44.     Goodwin's Price Proposal stated a proposed pouring sequence for castings the range of components required under the Purchase Order; specifically, Goodwin proposed pouring smaller castings together with larger castings to utilize every batch of molten steel (known as a "heat") as efficiently as possible, thereby enabling Goodwin to propose the most competitive price possible in an effort to secure award of the Purchase Order.

45.     On October 20, 2017, and May 4, 2018, Goodwin provided to GDEB additional pricing information to supplement Quote D1073.

46.     Goodwin's proposal supplements to Quote D1073 revised only the aspects of its proposal relevant to GDEB's requests for pricing clarifications; Goodwin did not -- by these supplements to Quote D1073 or otherwise -- modify or alter its proposed technical approach including Expanded HY-80 Qualification.

47.     It was clear and understood by both parties that (i) Goodwin's proposed price did not include the additional costs, if any, of Goodwin seeking Expanded HY-80 Qualification, and (ii) that Goodwin would submit to GDEB formal quotes for the cost of NAVSEA extension for the three thicker parts.

48.     GDEB did not at any time prior to or in connection with award of the Purchase Order exercise its right under the RFQ (i) to disqualify Goodwin for noncompliance with NAVSEA qualification requirements, or (ii) to award only a partial Purchase Order for the castings that were within Goodwin's then-current NAVSEA qualification.

**C.      The Purchase Order**

49.     On May 22, 2018, GDEB awarded the Purchase Order to Goodwin for a firm, fixed price of $18,290,920.38.

50.     In accordance with the RFQ, the Purchase Order stated that it was "awarded in accordance with E supply quote D1073.00 submitted by Goodwin Steel Castings." (Ex. A at p. 7.)

51.     The Purchase Order incorporated GDEB's standard terms and conditions for purchase orders under prime federal contracts, titled Electric Boat Corporation Terms and Conditions No. EB-2NC Non-Commercial Rev 2, as amended ("Terms and Conditions," attached hereto as Exhibit B).

52.     The Terms and Conditions expressly provide that "[t]his purchase order is a subcontract under [GDEB]'s prime contract with the U.S. Government.  Unless specifically stated otherwise in writing in the Purchase Order, it neither establishes not intends to establish any privity of contract between [Goodwin] (or any other entity) and the U.S. Government nor does it bind or purport to bind the United States Government, its officers, representatives, employees, or agents." (Ex. B at p. 1.)

53.     Thus, GDEB and Goodwin are the only parties bound by the Purchase Order and its Terms and Conditions.

54.     Sections 64 through 67 of the Terms and Conditions, titled "Changes," set forth the requirements and procedures to any change to the Purchase Order.

55.     Specifically, Section 64(a) provides that GDEB's Materials Management Representative is responsible for issuing any changes to the general scope of the Purchase Order. (Ex. B  at p. 14.)

56.     Under Sections 64(b)-(f) of the Terms and Conditions, Goodwin is permitted to notify GDEB of any conduct which Goodwin "considers would constitute or would require a change to this contract" and, if an equitable adjustment to the Purchase Order's firm, fixed price is warranted, "proceed in accordance with the Changes clause herein." (Ex. B at pp. 14-15.)

57.     Section 64(f) provides that "[r]equests for equitable adjustment shall, when appropriate, be made in accordance with the Documentation of Requests for Equitable Adjustment [*i.e.*, Section 66] and other clauses, including certification requirements, contained herein."  (Ex. B at p. 15.)

58.     Section 64(e) provides that, in the event of a change or alleged change to the Purchase Order, "[Goodwin] shall diligently continue performance of the unaffected portions of

this Purchase Order to the maximum extent possible in accordance with its terms and conditions, and in a manner to minimize cost or price impact, schedule impact, and actual or potential delay and disruption of performance." (Ex. B at p. 15.)

59.     Further, Section 37(c) provides that, "[p]ending final resolution of any decision, appeal, or judgment of any proceedings relating to the Purchase Order, or the settlement of any dispute arising under this Purchase Order, [Goodwin] shall proceed diligently with the performance of this Purchase Order in accordance with all the terms and conditions contained herein." (Ex. B at p. 9.)

60.      On June 20, 2018, Goodwin executed the Purchase Order as awarded with the understanding that the parties would proceed with GDEB coordinating and funding Expanded HY-80 Qualification as proposed; to that end, Goodwin's signed Purchase Order Acknowledgement expressly stated that its acceptance was "SUBJECT TO THE TERMS OF OUR QUOTATION." Goodwin's Purchase Order Acknowledgement is attached hereto as Exhibit C.

**D.     Post-Award Interactions of the Parties**

61.     Subsequent to award of the Purchase Order, GDEB and Goodwin engaged in customer interface meetings prior to Goodwin commencing component manufacturing.

62.     Pursuant to these exchanges, Goodwin submitted on a rolling basis Vendor Procedure Approval Requests ("VPARs") for the components awarded to Goodwin under the Purchase Order, including the three thicker components.

63.     From award of the Purchase Order in May 2018 through July 2018, Goodwin continued to communicate with NAVSEA regarding the process for Expanded HY-80 Qualification; Goodwin included GDEB on each of these communications, yet GDEB failed to take an active role in securing Goodwin's Expanded HY-80 Qualification.

64.    For example, via e-mail dated July 2, 2018, Goodwin urgently requested official notification from NAVSEA regarding the status of its May 3, 2017 request for Expanded HY-80 Qualification.

65.    In subsequent e-mail correspondence to Goodwin and GDEB between July 2 and August 9, 2018, NAVSEA stated that there was limited availability for the qualification process due to "various high priority/visibility items."

66.    GDEB evaluated Goodwin's VPARs and issued authorizations to begin manufacture of the seven components with less-than-10-inch section thicknesses.

67.    On October 30, 2018, Goodwin commenced performance under the Purchase Order to the maximum extent possible in accordance with the GDEB-approved VPARs for the seven components with less-than-10-inch section thicknesses.

**E.    GDEB's Change to the Purchase Order and Goodwin's Continued Performance**

68.    With respect to the three thicker components, GDEB deviated from the parties' communications during the RFQ process and the executed Purchase Order between the parties.

69.    Rather than proceeding under the Purchase Order as awarded, GDEB disapproved Goodwin's VPARs for the three thicker components.

70.    Specifically, on August 22, 2018, GDEB issued VPAR responses SVE213-043 and SVE 214-005, rejecting Goodwin's requests for GDEB to coordinate and fund the process for Expanded HY-80 Qualification and instead directing Goodwin to apply directly to NAVSEA.

71.    As described in greater detail below, this rejection of Goodwin's request for GDEB to engage in the process for Expanded HY-80 Qualification amounted to a change in Purchase Order requirements that ultimately resulted in significant production delays and increased costs of performance for Goodwin.

72.     Despite GDEB's change in requirements, Goodwin continued its good faith performance under the Purchase Order to the maximum extent possible without Expanded HY-80 Qualification, as required under Sections 37(c) and 64(e) of the Terms and Conditions.

73.     As GDEB was well aware -- given its experience with its NAVSEA customer and its inclusion on Goodwin's qualification-related correspondence to NAVSEA -- Goodwin's Expanded HY-80 Qualification, coupled with continued performance under the Purchase Order, would incur significant increases in production costs.

74.     Specifically, GDEB was aware that Goodwin's increased costs would include additional raw material and processing costs attributable to pouring prototype castings for the three thicker components needed for Expanded HY-80 Qualification.

75.     Further, GDEB was aware that Goodwin would incur increased costs attributable to proceeding with manufacture and delivery of the other seven components in a manner and sequence that was changed from that proposed in Goodwin's bid.

76.     From August to December 2018, Goodwin continued the process of applying for the Expanded HY-80 Qualification, including the pouring of castings for NAVSEA inspection and approval, as well as continued performance under the Purchase Order.

77.     Goodwin continually apprised GDEB of the costs and status of this process; for example, on or around December 20-21, 2018, Goodwin exchanged e-mails with GDEB regarding the process and cost of Expanded HY-80 Qualification, notifying GDEB that expanded NAVSEA qualification would require a "22,000 lbs melt to produce a sacrificial qualification casting … in the region of $200k of hard cost."

12

78.     In the December 2018 e-mail exchange, Goodwin reminded GDEB that qualification costs had not been included in Goodwin's initial proposal and that Goodwin had "made every effort to draw your attention [to this] in our bid."

79.     Further, in an effort to be proactive and mitigate against anticipated increased costs and delay, Goodwin proactively proposed that GDEB authorize Goodwin to pour first foundry article ("FFA") castings of the three thicker components prior to Expanded HY-80 Qualification.

80.     On December 20, 2018, NAVSEA approved Goodwin's FFA testing plan to produce castings for the three thicker components.

81.     Accordingly, on January 12, 2019, Goodwin contacted GDEB via e-mail to obtain a risk release to permit Goodwin to cast the FFAs of the three thicker components.

82.     In response, on January 24, 2019, GDEB issued SVE 009-027 authorizing Goodwin to pour FFA castings for the three thicker components prior to receiving Expanded HY-80 Qualification from NAVSEA.

83.     GDEB conditioned this release on Goodwin "hold[ing] the financial risk and all liability" for production costs in the event that NAVSEA rejected Goodwin's FFA castings, to which Goodwin agreed in good faith in the interest of partnership and to facilitate continued Purchase Order performance.

84.     To expedite production and mitigate delays while awaiting NAVSEA's approval of the FFA castings, Goodwin requested on August 17, 2019, that GDEB approve full serial production of the three thicker castings prior to NAVSEA approval of the FFAs.

85.     On August 26, 2019, GDEB responded to Goodwin's request by issuing SVF 233-011, which permitted Goodwin to commence serial production of the three thicker components while awaiting a response from NAVSEA.

13

86.     Again, GDEB conditioned this release on "Goodwin accept[ing] 100% responsibility and risk related to pouring serial manufacture castings" in the event that NAVSEA either rejected the FFAs or Goodwin's request for Expanded HY-80 Qualification, and Goodwin again proactively accepted this risk in good faith to mitigate further delays to production.

87.     Thus, it took GDEB nearly ten months from the date of Goodwin's October 2018 commencement of performance -- and *over a year* from its August 2018 change to Purchase Order requirements -- to authorize Goodwin to begin serial production of the three thicker components.

88.     Due to GDEB's change to the Purchase Order, its unreasonable delay in authorizing serial production, and its requirement that Goodwin do so at its sole risk, Goodwin incurred significant disruption and increased costs of proceeding with manufacture and delivery of components in a manner and sequence that was changed from Goodwin's proposal and award.

89.     Specifically, to proceed with production while fulfilling GDEB's new requirement to apply directly to NAVSEA for Expanded HY-80 Qualification, Goodwin was forced to pour castings out of sequence.

90.     Rather than efficiently utilizing each heat to pour both small and large castings together as set forth in its proposal, Goodwin used heats to pour only the smaller castings.

91.     This resulted in numerous additional heats being necessary to pour the thicker components that were permissible only after GDEB authorized serial production on August 26, 2019.

92.     Throughout its performance under the Purchase Order, Goodwin funded, at its sole risk, the increase in costs due to seeking Expanded HY-80 Qualification, including FFA casting and serial production, and the increased costs of continued performance.

93.     Between October 2019 and March 2020, Goodwin engaged in multiple correspondences with NAVSEA regarding the status of Expanded HY-80 Qualification and copied GDEB on all such exchanges.

94.     On March 25, 2020, NAVSEA sent Goodwin official notice of its approved Expanded HY-80 Qualification, SUBJECT line "Goodwin Steel Castings HY-80 Extension Qualification to 13.5 Inches."

**F.     The Change Process**

95.     GDEB's decision to deviate from the awarded Purchase Order constituted a change in requirements under the Changes clause of the Purchase Order Terms and Conditions.

96.     The period of time affected by GDEB's change to the Purchase Order began with its August 17, 2018 direction to Goodwin to apply directly to NAVSEA for Expanded HY-80 Qualification and extended until GDEB's August 26, 2019 issuance to Goodwin of a serial production risk release -- a time period of over a year.

97.     Over the course of the year-plus period of time, Goodwin's continued performance of the Purchase Order in compliance with Sections 37(c) and 64(e) of the Terms and Conditions resulted directly in Goodwin incurring a significant increase in production costs from that which the parties agreed when they executed the Purchase Order.

98.     Specifically, GDEB's change not only required Goodwin to pay for the costs of securing Expanded HY-80 Qualification directly from NAVSEA, but also resulted in increased costs in the form of additional melts and excess revert (*i.e.*, scrap metal) resulting from Goodwin's continued performance.

99.     On April 7, 2020, Goodwin by letter notified GDEB of NAVSEA's March 25, 2020 approval of Goodwin's Expanded HY-80 Qualification.

100.    Goodwin's April 7, 2020 letter also provided GDEB with official notice of Goodwin's claim for increased costs resulting from GDEB's change, listed the types of increased costs that Goodwin incurred, and requested that GDEB issue an official Purchase Order change pursuant to the Changes clause of the Terms and Conditions.

101.    Goodwin received no response from GDEB to its April 7, 2020 request for an official notice of a Purchase Order change.

**G.    Request for Equitable Adjustment**

102.    When Goodwin received no response from GDEB to the April 7, 2020 notice of claim, Goodwin proceeded with an official request to GDEB's Materials Management Representative for equitable adjustment under Terms and Conditions Section 66, Documentation of Requests for Equitable Adjustment.  Goodwin's May 28, 2020 request for equitable adjustment ("REA"), with all enclosures thereto, is attached here as Exhibit D.

103.    Goodwin's REA identified an overall claim of $2,077,789.18, attributable to the following three specific increases in costs:

  a.    Expanded HY-80 Qualification: $348,011.08 for the cost of pouring and testing FFAs for the three thicker components.

  b.    Additional Melt:   $656,037.66 for the increase in costs of pouring components out of sequence during continued Purchase Order performance while awaiting Expanded HY-80 Qualification.

  c.    Excess Revert:  $1,073,740.55 for losses due to the increase in excess revert, *i.e.*, unusable scrap metal, resulting from pouring components out of sequence during continued Purchase Order performance while awaiting Expanded HY-80 Qualification.

104.    Goodwin's REA provided all documentation required under Section 66 of the Terms and Conditions including, but not limited to, detailed descriptions of the work added by GDEB's change, the interference and inefficiencies in Purchase Order performance caused by the

16

change, the period of time affected by the change, measures taken to lessen disruption caused by the change, and measure taken to mitigate costs and delays attributable to the change.  (See Ex. D at pp. 4-10.)

105.    By letter dated July 16, 2020, GDEB acknowledged receipt of Goodwin's May 29, 2020 REA.

106.    By e-mail dated September 4, 2020, Goodwin requested a status of the REA and provided additional information to assist GDEB with its assessment of the REA, again drawing GDEB's attention to the relevant portions of Goodwin's initial proposal in response to the RFQ that expressly identified the need for GDEB to coordinate and fund Expanded HY-80 Qualification.

107.    By e-mail dated November 18, 2020, nearly six months after Goodwin's submission, GDEB responded to the REA and summarily rejected Goodwin's claim for Expanded HY-80 Qualification costs.

108.    Specifically, GDEB erroneously stated that "[n]o mention of any requalification costs were part of the VBID or subsequent award and acknowledgement of the purchase order. Goodwin assumed the extension would be granted and bid accordingly."

109.    GDEB's justification for rejecting Goodwin's claim for Expanded HY-80 Qualification costs is unsupported by the record, as Goodwin's pre- and post-proposal correspondence with GDEB and NAVSEA, as well as the proposal itself, clearly established Goodwin's intention for GDEB to coordinate and fund Expanded HY-80 Qualification.  (*See, e.g.*, Ex. D at pp. 1-4 and Enclosures A through K.)

110.    Further, GDEB's contention that the costs of Expanded HY-80 Qualification were not part of the Purchase Order award is belied by the fact that GDEB expressly awarded the

Purchase Order to Goodwin "in accordance with E supply quote D1073.00," which specifically proposed Expanded HY-80 Qualification for the three thicker components. (Ex. A at p. 7.)

111.    GDEB's e-mail response to the REA also rejected Goodwin's claim for additional melt and excess revert costs, stating: "It is not clear why excessive revert was a result of pouring out of sequence.  Revert would exist whether the castings were poured to plan or not, and should therefore have been included in the price quote for the bid."

112.    Despite rejecting the claims in the REA, GDEB's e-mail acknowledged that Goodwin may have experienced undue delay and costs resulting from Expanded HY-80 Qualification and directed Goodwin to submit a revised claim for costs incurred:

> If Goodwin has experienced undue delay during their NAVSEA requalification efforts and see this as a potential path to recovery of some incurred costs, Goodwin would need to quantify this delay and incurred costs as part of their REA and resubmit.
>
> Please provide a resubmittal of the claimed incurred cost breakdown which directly relates to the entitlement basis described above, and [GDEB] can review to determine if there might be a recovery path with NAVSEA.

113.    By e-mail dated November 23, 2020, Goodwin informed GDEB that it disputed GDEB's rejection of the REA and requested a conference with counsel present in accordance with Section 37 of the Terms and Conditions.  (*See* Ex. B at p. 8 ("The parties will attempt to settle in good faith all disputes related to this Purchase Order at the lowest practicable level.").)

114.    E-mail correspondence and telephone conferences between the parties and counsel occurred between October 23 and October 30, 2020, in an attempt to resolve Goodwin's claims.

115.    As a result of this correspondence, Goodwin submitted to GDEB on December 8, 2020, a revised REA further detailing Goodwin's support and documentation for its entitlement to the claims set forth in the REA.  Goodwin's revised REA is attached hereto as Exhibit E.

**H.     Attempts at REA Dispute Resolution and the Parties' Joint Audit of Costs**

116.   The parties continued discussions throughout December 2020 and January 2021, resulting in Goodwin drafting, in slide presentation format, detailed responses to GDEB's questions regarding the REA.

117.    As a result of Goodwin's responses to GDEB's inquiries, the parties collaborated on a joint financial audit of Goodwin's increased costs resulting from the change to determine the extent of equitable adjustment to which Goodwin may be entitled.

118.   Following the joint audit of increased costs, Goodwin sent to GDEB's Materials Management Representative a letter dated February 5, 2021, with a revised breakdown of claimed costs based on the parties' joint audit.  The revised breakdown of costs increased the overall claim under the REA to $2,803,365.77.   Goodwin's February 5, 2021 letter providing a revised breakdown of costs is attached hereto as Exhibit F.

119.   The increase in costs to $2,803,365.77, from the $2,077,789.18 claim in the original May 28, 2020 REA, resulted from (i) an increase in the volume of extra metal poured out of sequence during Purchase Order performance while awaiting Expanded HY-80 Qualification, which was discovered during the joint review by both Goodwin and GDEB, and (ii) the rate of currency exchange increasing from 1.27 GBP/USD at the time of the May 2020 REA to the rate of 1.38 GBP/USD in effect in February 2021.  (*See* Ex. F at p. 1.)

120.   Specifically, the revised breakdown of costs set forth the following with regard to the REA $2,803,365.77:

>    a.     Expanded HY-80 Qualification: $378,153.77 for the cost of pouring and testing FFAs for the three thicker components, an increase from $348,011.08 in the original REA.

>    b.     Additional Melt:  $1,523,520.00 for the increase in costs of pouring components out of sequence during continued Purchase Order performance

> while awaiting Expanded HY-80 Qualification, and increase from $656,037.55 in the original REA.
>
> c.   Excess Revert:  $901,692.00 for losses due to the increase in excess revert, *i.e.*, unusable scrap metal, resulting from pouring components out of sequence during continued Purchase Order performance while awaiting Expanded HY-80 Qualification, a decrease from $1,073,740.55 in the original REA.

(Ex. F at pp. 1-2.)

121.   GDEB personnel participated fully in the joint audit and concurred with the revised breakdown of costs set forth in Paragraph 120 above.

122.   The Parties continued dispute-related correspondence in February and March 2021.

123.   On Wednesday, March 31, 2021, the parties engaged in a telephone conference during which GDEB acknowledged that Goodwin had been "harmed" by GDEB's change to the Purchase Order.

124.   Nevertheless, despite this admission and its participation in the joint audit that calculated the quantum of equitable adjustment due to Goodwin, GDEB made no further commitment toward payment of Goodwin's claim in the REA.

## COUNT I
### (Breach of Contract)

125.   Goodwin incorporates Paragraphs 1 through 124 above as though set forth at length herein.

126.   GDEB was aware for numerous reasons that Goodwin's proposal contemplated GDEB covering the cost of Expanded HY-80 Qualification, including, but not limited to, the following reasons:

> a.   First, as discussed above, GDEB had set a precedent between the parties when it funded Goodwin's original HY-80 Qualification to produce cast components with section thicknesses up to 10 inches.

20

  
b.      Second, Goodwin copied GDEB senior management on Goodwin's pre-proposal written request to NAVSEA for Expanded HY-80 Qualification to pour components thicker than 10 inches.

c.      Third, Goodwin also submitted the scope extension request to GDEB as Appendix 2 of its proposal in response to the RFQ, in which Goodwin clearly stated its post-award intent "to provide GDEB formal quotations to the part numbers subject to an extension of scope to be provided by NAVSEA." (*See* Ex. D at Encl. D, Goodwin HY-80 Qualification - Scope Extension Request at p. 1.)

d.      Fourth, Goodwin had submitted a VIR to GDEB prior to submission of Goodwin's proposal in response to the RFQ, which stated Goodwin's intention "to discuss with [GDEB] a proposal for qualification of section thickness above 10"." (*See id.* at Encl. E, VIR 28-03-2017, March 29, 2017.)

e.      Fifth, Goodwin's proposal itself, at page 55, specifically referenced the March 2017 VIR and expressly identified the three parts for which Goodwin would need Expanded HY-80 Qualification.

f.      Finally, Goodwin attached the March 29, 2017 VIR in its May 4, 2017 proposal to GDEB in response to the RFQ. (*See id.* at Encl. E, VIR 28-03-2017, March 29, 2017.)

127.    Goodwin incorporated the items in Paragraphs 128 above in its electronic proposal submitted to GDEB as Quote D1073, in accordance with the RFQ's Bidders' Instructions.

128.    GDEB awarded the Purchase Order in accordance with the RFQ and "with E supply quote D1073.00 submitted by Goodwin Steel Castings." (Ex. A at p. 7.)

129.    The Purchase Order is a valid and enforceable contract, executed by the parties in May 2018.

130.    GDEB's deviation from the awarded Purchase Order requirements -- namely, its shift to requiring Goodwin alone to apply for and fund the Expanded HY-80 Qualification from NAVSEA -- is a change to Purchase Order requirements under the Changes clause of the Terms and Conditions.

131.    Goodwin's May 28, 2020 Request for Equitable Adjustment, as supplemented and amended to-date, is a proper claim under the Changes clause for reimbursement of increased costs suffered as a result of GDEB's change to the Purchase Order.

132.    GDEB's failure to comply with the Changes clause of the Purchase Order is a material breach of contract.

133.    As a result of GDEB's breach of contract, Goodwin has suffered direct damages in the amount of at least $2,803,365.77, as well as incidental and consequential damages.

WHEREFORE, Plaintiff Goodwin Steel Castings Ltd. requests that the Court enter judgment on this Count in its favor and against Defendant General Dynamics Electric Boat in an amount in excess of $75,000, and such other legal and/or equitable relief as the Court deems appropriate.

## COUNT II
### (*Quantum Meruit -- in the alternative*)

134.    Goodwin incorporates Paragraphs 1 through 133 above as though set forth at length herein.

135.    As a result of GDEB's actions, Goodwin incurred substantial increased costs to pour, cast, finish, and supply all component parts that GDEB purchased from Goodwin.

136.    Goodwin's manufacture and delivery of the components purchased by GDEB conferred a significant benefit onto GDEB.

137.    GDEB appreciated the benefit that Goodwin conferred on GDEB.

138.    GDEB has accepted and continues to accept the component parts manufactured by Goodwin and has retained the benefit of the costs and efforts borne by Goodwin.

139.   It is inequitable to allow GDEB to retain the benefits without paying Goodwin for the value of the work performed.

WHEREFORE, Plaintiff Goodwin Steel Castings Ltd. requests that the Court enter judgment on this Count in its favor and against Defendant General Dynamics Electric Boat in an amount in excess of $75,000, and such other legal and/or equitable relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury as a matter of right.

Respectfully submitted,

*s/Rowena A. Moffett*
Rowena A. Moffett (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, Connecticut 06511-3714
(203) 772-2600
(203) 562-2098 (facsimile)
rmoffett@bswlaw.com

*s/   William S. Speros*
William S. Speros (*pro hac vice* admission pending)
Jamie R. Schumacher (*pro hac vice* admission pending)
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7764
(814) 454-4647 (facsimile)
wsperos@mijb.com
jschumacher@mijb.com

Attorneys for Plaintiff
Goodwin Steel Castings Ltd.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2021, the foregoing Complaint was filed electronically with the Clerk of Court, using the CM/ECF system.  Notice of this filing will be sent to all parties who have appeared of record by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.

*s/Rowena A. Moffett*
Rowena A. Moffett (ct19811)